**RYLEY CARLOCK & APPLEWHITE**
One North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4417
Telephone: 602/258-7701
Telecopier: 602/257-9582

Fredric D. Bellamy – 010767
fbellamy@rcalaw.com

Lorena C. Van Assche – 025408
lvanassche@rcalaw.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| JACOB A. CRUZ,<br><br>Plaintiff,<br><br>v.<br><br>ATLEE A. COCKRELL and POLLY D. COCKRELL, husband and wife,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Jacob Cruz ("Cruz" or "Plaintiff") alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Cruz is a resident of the State of Arizona.

2. Defendants Atlee A. Cockrell and Polly D. Cockrell (collectively, "Defendants") are husband and wife and residents of the State of North Carolina.

3. At all times relevant herein, Atlee Alan Cockrell ("Alan") and Polly Dunaway Cockrell were acting on behalf and for the benefit of their marital community.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy herein exceeds $75,000.

5. Defendant Alan and Cruz entered into the oral agreement that is the basis of this case in Maricopa County, Arizona. The acts and omissions out of which Plaintiff's claims arise

were committed, in whole or in part, in Maricopa County, Arizona. Therefore, venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b).

**FACTS**

**The Business Relationship Between Cruz and Defendant Alan**

6. Cruz played baseball for the Arizona State University baseball team from 1991 through 1994.

7. From 1994 to 2010, Cruz played professional baseball in the U.S. and abroad.

8. In 2010, the Arizona Diamondbacks hired Cruz as a hitting coach.

9. In 2011, Cruz met Defendant Alan. At the time, Defendant Alan was the hitting coordinator for the Arizona Diamondbacks and Cruz' boss.

10. In September 2013, Defendant Alan and Cruz were working together in Arizona.

11. In September 2013, Defendant Alan approached Cruz about assisting and investing in the development of an iPhone application to assist baseball players with hitting. Cruz agreed to assist and invest in the iPhone application.

12. After Cruz and Defendant Alan investigated all that would be required for the undertaking, including the time and money required to begin the development and patenting of the iPhone application, Defendant Alan decided he did not want to move forward with the idea and all work on the iPhone application ceased.

13. During the same time, Defendant Alan was promoting a training device named Power Drive and promoting the idea of a hitting mat that fit Power Drive (the "Hitting Mat").

14. During the course of their relationship, in September 2013, Cruz shared several ideas about baseball with Defendant Alan, however, Cruz never shared any details of his ideas.

**Cruz Invented the Hitting Cup**

15. In 2013, Cruz was working on developing a baseball bat hitting cup (the "Hitting Cup").

16. In September 2013, while Defendant Alan was still working on the Hitting Mat idea, he asked Cruz about Cruz' Hitting Cup idea.

17. In order to demonstrate his Hitting Cup idea to Defendant Alan, Cruz purchased a

cup and went with Defendant Alan to a workshop at the Salt River Fields where Cruz cut the cup (the "Demo Hitting Cup").

18. Cruz and Defendant Alan returned to the batting cages at the Salt River Fields and Cruz rigged the Demo Hitting Cup by taping it to a bat and making a wedge to support it.

19. Thereafter Cruz assembled a demonstration bat (the "Demo Bat") with the Demo Hitting Cup, and advised Defendant Alan that this was his Hitting Cup idea.

20. Cruz and Defendant Alan tested the Demo Bat with the Demo Hitting Cup at the Salt River Fields batting cages.

**The Oral Agreement**

21. Impressed with Cruz' Hitting Cup idea, Defendant Alan advised Cruz that he had extensive business experience with baseball products.

22. Defendant Alan told Cruz that he had invented a pitching machine and had gone into business with his father-in-law marketing the pitching machine which he claimed was out in the market.

23. Defendant Alan claimed to have strong business contacts, including two baseball academies, to whom he could market the Hitting Cup.

24. Although the Hitting Cup was Cruz' idea and invention, Cruz agreed to partner with Defendant Alan and allow Defendant Alan to handle the business side of their business arrangement, including all the paperwork, while Cruz would handle the manufacturing side of the Hitting Cup.

25. As part of their business arrangement, it was Defendant Alan's duty to have a business agreement prepared.

26. As part of their business arrangement, it was Defendant Alan's duty to form a limited liability company.

27. As part of their business arrangement, it was Defendant Alan's duty to file for a patent application.

28. As part of their business arrangement, it was Defendant Alan's duty to handle all paperwork necessary to form the business venture.

29. Cruz and Defendant Alan shook hands and orally agreed that they would be equal partners regarding the Hitting Cup venture.

30. Defendant Alan asked Cruz whether he could keep the Demo Bat and Demo Hitting Cup and Cruz allowed him to keep it. However, Cruz admonished Defendant Alan that Defendant Alan could not take ownership of the Hitting Cup and represent it as his own.

**Cruz and Defendant Alan Begin Work on Their Business Venture**

31. In late 2013, Defendant Alan presented the idea of the Hitting Cup to Power Drive.

32. Upon information and belief, Power Drive initially expressed an interest in the Hitting Cup but then backed off.

33. Upon information and belief, Defendant Alan asked Power Drive for the name of its patent attorney and Power Drive referred Defendant Alan to a patent attorney in Massachusetts named Daniel S. Kriegsman.

34. Cruz made a prototype of the Hitting Cup out of clay.

35. Cruz researched companies that could make a three dimensional ("3-D") print of the Hitting Cup.

36. Cruz also researched companies to undertake injection molding of the Hitting Cup in Mexico.

37. Cruz received bids ranging from $10,000 to $15,000 for a 3-D printing of the Hitting Cup.

38. In an effort to curb starting costs, Cruz asked his cousin, Cesar Cruz, a registered architect in the State of California, to prepare the drawings for the Hitting Cup.

39. Cesar Cruz agreed to prepare the drawings for the Hitting Cup and await payment until the Hitting Cup began generating revenues.

40. Cruz and Defendant Alan agreed to pay Cesar Cruz for his services once the Hitting Cup began generating revenues even though the total cost for Cesar Cruz' services still had to be determined.

41. Cesar Cruz drafted the design for the Hitting Cup based on information and

specifications provided by Cruz.

42. In December 2013, Defendant Alan claimed there was an angle on the Hitting Cup and sent the Demo Bat to Cesar Cruz in order to show him the angle he believed existed.

43. Cesar Cruz disregarded Defendant Alan's suggestions as an angle did not exist and continued drafting the design for the Hitting Cup based on Cruz' specifications.

**<u>The Provisional Patent Application</u>**

44. In January 2014, Defendant Alan advised Mr. Cruz that he had filed an application for a provisional patent for the Hitting Cup (the "Provisional Patent Application").

45. Defendant Alan never provided Cruz with any paperwork to review before filing the Provisional Patent Application.

46. Other than providing information regarding the specifics for the Hitting Cup, Cruz was not involved in any part of the Provisional Patent Application.

**<u>The Injection Molding Company-Solid Concepts, Inc.</u>**

47. In January 2014, Cruz began searching for an injection molding company in the U.S. and found a company in Gilbert, Arizona named Solid Concepts, Inc.

48. Cruz met with a sales representative for Solid Concepts, Inc. who asked Cruz for the name of his company. Cruz advised the sales representative that a company name had not been selected yet.

49. Cruz was still waiting for Defendant Alan to provide him with a business agreement.

50. Cruz entered into an agreement with Solid Concepts, Inc. regarding its production of the Hitting Cup.

51. Solid Concepts, Inc. requested payment for a silicone mold of the Hitting Cup.

52. Cruz and Defendant Alan each paid Solid Concepts, Inc. one-half of the cost of the silicone mold of the Hitting Cup.

53. Unbeknownst to Cruz, Defendant Polly Cockrell had sent payment in the form of a check drawn from her personal account.

54. Over the next few months, Cruz worked with Solid Concepts, Inc. testing out

different plastics to use for the Hitting Cup.

55. Cruz sent prototypes of the Hitting Cup to Defendant Alan to keep him apprised of the status of the development and production of the Hitting Cup.

56. Once the Hitting Cup configuration had been finalized, Solid Concepts, Inc. commissioned to have a metal mold of the Hitting Cup made in China.

57. The cost of the metal mold was approximately $13,000.

58. Sold Concepts, Inc. requested payment for the metal mold of the Hitting Cup.

59. Defendant Alan advised Cruz that he did not have enough money to pay for one-half the cost of the metal mold and Cruz offered to pay for his portion.

60. Unbeknownst to Cruz, Defendant Polly Cockrell sent Solid Concepts, Inc. partial payment for the metal mold in the approximate amount of $2,000.

**Disputes Arise Between the Parties**

**Defendant Alan Fails to Prepare a Business Agreement, Fails to Form the Company, and Attempts to Change the Oral Agreement**

61. For many months, Cruz repeatedly requested that Defendant Alan advise him of the status of their business agreement and the formation of the limited liability company but Defendant Alan made excuses each time.

62. Finally, Defendant Alan advised Cruz that Defendant Alan did not have the time or money to have the business agreement prepared or to form the limited liability company.

63. In June 2014, Defendant Alan called Cruz and advised him that he wanted to put the paperwork together for their business agreement.

64. During this conversation, Defendant Alan attempted to change the oral agreement that Defendant Alan and Cruz had made in September 2013. Defendant Alan advised Cruz that he wanted to add his wife, Defendant Polly Cockrell, to their business agreement and add her as a member of the new limited liability company that Defendant Alan intended to form. Unbeknownst to Cruz, Defendant Alan had promised his wife that she would be a 25% owner of the company.

65. Cruz advised Defendant Alan that this was not part of their agreement and refused

to allow Defendant Polly Cockrell to be a part of the business venture in any way.

66. Defendant Alan advised Cruz that he would discuss it with his wife and she would get over it.

67. Several days later, Defendant Alan called Cruz and advised him that Defendant Polly Cockrell was adamant that she wanted to be a part of the business venture.

68. Cruz was equally adamant that Defendant Polly Cockrell was not going to be a part of their business venture.

69. Even though there was no immediate resolution to their differences regarding Defendant Polly Cockrell's involvement in the company or business, Defendant Alan and Cruz continued with their business relationship.

70. Defendant Alan and Cruz worked on domain names, packaging, balls, etc.

71. Defendant Polly Cockrell decided to purchase domain names and again Cruz objected to her doing so.

72. More issues arose between Defendant Alan and Cruz when Defendant Alan asked for payment of a commission for a sale he had made or was going to make of the Hitting Cup.

73. Cruz advised Defendant Alan that their agreement was an equal partnership and objected to the idea that Defendant Alan be able to collect a commission.

74. Although the dispute escalated into Defendant Alan swearing at Cruz and calling him vulgar names, they both managed to resolve their differences regarding this issue.

75. Later, Defendant Alan advised Cruz that he wanted to hire his wife to be in charge of accounting. After discussing it, Cruz finally agreed to allow Defendant Polly Cockrell to be in charge of accounting.

76. Defendant Alan and Cruz agreed that Cruz would be in charge of production and distribution.

77. Defendant Alan later changed his mind and objected to Cruz being in charge of production and distribution.

78. Cruz also objected to Defendant Alan being in charge of production, distribution, and marketing.

79. Defendant Alan later conceded that Cruz could be in charge of production and distribution. A true and correct of the text messages containing this concession are attached hereto as **Exhibit A** and incorporated herein by this reference.

**Defendant Alan Attempts to Divert the Hitting Cups to His Wife's Company**

80. By August 2014, production of the Hitting Cup was ready to begin and Defendant Alan and Cruz had agreed to order 5000 Hitting Cups from Solid Concepts, Inc.

81. Upon information and belief, Defendant Alan had secretly negotiated a deal for 900 Hitting Cups and was not going to share any of those profits with Cruz.

82. In violation of their agreement, on September 15, 2014, Defendant Alan emailed Solid Concepts, Inc. requesting that Solid Concepts, Inc. send him half of the Hitting Cups that had been ordered. A true and correct copy of the email is attached hereto as **Exhibit B** and incorporated herein by this reference.

83. Defendant Alan also requested that the invoice for the Hitting Cups be sent to C² Innovative, LLC a limited liability company that is in the sole name of Defendant Polly Cockrell. A true and correct copy of the North Carolina Secretary of State records regarding C² Innovative, LLC, organized on July 9, 2014, are attached hereto as **Exhibit C** and incorporated herein by this reference.

84. Upon information and belief, Defendant Alan also organized a separate limited liability company known as Dunaway 31, LLC in which Defendant Alan is the sole member. A true and correct copy of the North Carolina Secretary of State records regarding Dunaway 31, LLC, organized on July 9, 2014, are attached hereto as **Exhibit D** and incorporated herein by this reference.

85. Despite advising Cruz that he did not have the time or money to prepare the business agreement, Defendant Alan had the time and money to organize Dunaway 31, LLC.

86. Solid Concepts, Inc. forwarded Defendant Alan's email to Cruz and for the first time Cruz learned that Defendant Polly Cockrell had formed a limited liability company and that Defendant Alan intended to bill the cost of the Hitting Cups to Defendant Polly Cockrell's limited liability company, C² Innovative, LLC.

87. Solid Concepts, Inc. refused to send the Hitting Cups to Defendant Alan because Defendant Alan's name was not on the order and its relationship was only with Cruz. A true and correct copy of the correspondence between Solid Concepts, Inc. and Cruz recognizing Cruz as the owner of the Hitting Cup mold is attached hereto as **Exhibit E** and incorporated herein by this reference.

88. On September 18, 2014, Defendant Alan called Cruz and told him that he had attempted to pay for the Hitting Cups but was denied and did not know what was going on.

89. Cruz confronted Defendant Alan and told him that he knew Defendant Alan had attempted to steal the Hitting Cups and divert them to his own company. Unbeknownst to Cruz, Defendant Alan actually attempted to divert the Hitting Cups to his wife's company, $C^2$ Innovative, LLC.

90. When confronted with the truth, Defendant Alan admitted to Cruz that he had attempted to divert the Hitting Cups to a separate company.

91. Defendant Alan proposed that he and Cruz go their separate ways and that Defendant Alan would handle the east coast and Cruz handle the west coast.

92. Cruz refused to accept Defendant Alan's proposal to split the U.S. market.

93. Despite Defendant Alan's flagrant violations of their oral agreement, Cruz attempted to keep his end of the deal, and on September 29, 2014, Cruz sent Defendant Alan a proposed agreement via certified mail (the "Proposed Agreement"). Defendant Alan signed the return receipt for the Proposed Agreement but never returned the signed Proposed Agreement to Cruz. True and correct copies of the Proposed Agreement and signed return receipt are attached hereto as **Exhibit F and G** and incorporated herein by this reference.

**<u>Defendants Harassed Solid Concepts, Inc. and Forced It to End Their Business Relationship with Cruz</u>**

94. Defendants harassed Solid Concepts, Inc. and threatened to file a lawsuit against it because they were unsuccessful in forcing Solid Concepts, Inc. into sending them half of the Hitting Cups that had been made.

95. Solid Concepts, Inc. offered Defendants to refund their money but Defendants

refused.

96. Although attorneys for Solid Concepts, Inc. sent Cruz a letter acknowledging that Solid Concepts, Inc. was doing business solely with Cruz, Solid Concepts, Inc. requested that Cruz obtain a bond in the amount of $2,000,000 in order to continue doing business together.

97. Because Defendants would not stop harassing Solid Concepts, Inc., Solid Concepts, Inc. ended its business relationship with Cruz.

98. As a result, Cruz was forced to find a new manufacturer and pay the balance due and owing to Solid Concepts, Inc.

99. Cruz paid Solid Concepts, Inc. $5,000 for its services.

100. Cruz also paid Cesar Cruz $13,500 for his services.

101. Cruz paid approximately $13,000 for the metal mold of the Hitting Cup.

102. On February 15, 2015, Cruz sent Defendant Alan's attorney a letter advising Defendant Alan that given Defendant Alan's refusal to sign the Proposed Agreement and continued wrongful conduct, the letter served as written notification that no business agreement existed between Defendant Alan and Cruz. A true and correct copy of the letter is attached hereto as **Exhibit H** and incorporated herein by this reference.

**<u>The Non-Provisional Patent Application</u>**

103. Cruz requested to see a copy of the Provisional Patent Application and for the first time learned that Defendant Alan has listed himself as a co-inventor.

104. Defendant Alan never told Cruz that there was a place in the Provisional Patent Application to list the inventor of the Hitting Cup.

105. Defendant Alan is not an inventor of the Hitting Cup.

106. On October 31, 2014, Cruz filed a non-provisional patent application removing Defendant Alan as a co-inventor of the Hitting Cup. A true and correct copy of the non-provisional patent application is attached hereto as **Exhibit I** and incorporated herein by this reference.

107. On January 5, 2015, Defendant Alan visited a new patent attorney and filed his own non-provisional patent application and listed himself as the sole inventor of the Hitting

Cup.

**The Unauthorized and Lost Sales**

108. In or around the end of February 2016, Cruz learned that Defendant Alan was selling his version of the Hitting Cup through his website www.swingpathcoach.com.

109. Defendant Alan is selling his version of the Hitting Cup without Cruz' permission and without sharing in any profits with Cruz.

110. Upon information and belief, Defendant Alan unlawfully manufactured his version of the Hitting Cup which he calls the SwingPath Coach.

111. On the website www.swingpathcoach.com, Defendant Alan misrepresents that the "SwingPath Coach **was designed** by Big League Hitting Coach Alan Cockrell…" (Emphasis added).

112. Defendant Alan did not design the Hitting Cup, or as he calls it, the SwingPath Coach.

113. Cruz and Defendant Alan intended to sell each Hitting Cup for $50.

114. Upon information and belief, Defendant Alan has received sales orders for at least 2,150 Hitting Cups at the sales price of $50 each, for a total of $107,500.

**COUNT I**
**(Breach of Contract)**

115. Cruz realleges and incorporates by reference the foregoing allegations.

116. Cruz and Defendant Alan entered into an oral agreement that they would be equal partners in developing, marketing, and selling the Hitting Cups.

117. Defendant Alan breached the oral agreement by not having a business agreement prepared.

118. Defendant Alan breached the oral agreement by not forming a limited liability company.

119. Defendant Alan breached the oral agreement by unlawfully manufacturing his own version of the Hitting Cup and selling it without Cruz' permission and without sharing in any sales with Cruz.

120. As a result of Defendant Alan's breach of the oral agreement, Cruz has been damaged.

121. Cruz has been damaged in an amount to be proven at trial but no less than $75,000.

**WHEREFORE**, Cruz prays for a judgment and decree in its favor and against Defendant Atlee A. Cockrell, individually, and the marital community consisting of Defendant Atlee A. Cockrell and Defendant Polly D. Cockrell, each, jointly and severally, as follows:

(A) Rescission of the oral agreement;

(B) In the alternative to the relief requested in paragraph (A), damages in an amount not less than $107,500.00 or such greater amount as may be established at trial;

(C) An award of attorneys' fees and costs pursuant to A.R.S. §§12-341, 12-341.01 *et seq.*;

(D) Pre- and post-judgment interest on any damage award at the legal rate; and

(E) Such other and further relief as the Court may determine to be appropriate.

**COUNT II**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

122. Cruz realleges and incorporates by reference the foregoing allegations.

123. Every contract implies a covenant of good faith and fair dealing.

124. The covenant of good faith and fair dealing prohibits a party from doing anything that would prevent or hinder the other party's ability to receive the benefits and entitlements of the contract.

125. Defendant Alan violated his duty of good faith and fair dealing to Cruz by not preparing a business agreement, not forming a limited liability company as agreed, listing himself as a co-inventor in the Provisional Patent Application and listing himself as the sole inventor in his non-provisional patent application, and unlawfully manufacturing his own version of the Hitting Cup and selling it without Cruz' permission and without sharing in any sales with Cruz.

126. As a result of Defendant Alan's breach of his duty of good faith and fair dealing,

Cruz has been damaged.

127. Cruz has been damaged in an amount to be proven at trial but no less than $75,000.

**WHEREFORE**, Cruz prays for a judgment and decree in its favor and against Defendant Atlee A. Cockrell, individually, and the marital community consisting of Defendant Atlee A. Cockrell and Defendant Polly D. Cockrell, each, jointly and severally, as follows:

(A) Rescission of the oral agreement;

(B) In the alternative to the relief requested in paragraph (A), damages in an amount not less than $107,500.00 or such greater amount as may be established at trial;

(C) An award of attorneys' fees and costs pursuant to A.R.S. §§12-341, 12-341.01 *et seq.*;

(D) Pre- and post-judgment interest on any damage award at the legal rate; and

(E) Such other and further relief as the Court may determine to be appropriate.

**COUNT III**
**(Promissory Estoppel)**

128. Cruz realleges and incorporates by reference the foregoing allegations.

129. Defendant Alan promised Cruz that he would partner with Cruz in the Hitting Cup business venture and would assume the business side of such venture including procuring a business agreement, forming a limited liability company, marketing and selling the Hitting Cups, and sharing equally in the profits of the business.

130. Defendant Alan expected, or reasonably should have expected, that his promise to handle the business side of the Hitting Cup venture would induce Cruz into entering into the agreement with him.

131. Cruz relied on Defendant Alan's promise to handle the business side of the Hitting Cup venture to his detriment.

132. Cruz' reliance on Defendant Alan's promise was justifiable.

133. Cruz has been damaged by his justifiable reliance on Defendant Alan's promise.

**WHEREFORE**, Cruz prays for a judgment and decree in its favor and against Defendant

Atlee A. Cockrell, individually, and the marital community consisting of Defendant Atlee A. Cockrell and Defendant Polly D. Cockrell, each, jointly and severally, as follows:

(A) Rescission of the oral agreement;

(B) In the alternative to the relief requested in paragraph (A), damages in an amount not less than $107,500.00 or such greater amount as may be established at trial;

(C) An award of attorneys' fees and costs pursuant to A.R.S. §§12-341, 12-341.01 *et seq.*;

(D) Pre- and post-judgment interest on any damage award at the legal rate; and

(E) Such other and further relief as the Court may determine to be appropriate.

**COUNT III**
**(Declaratory Judgment)**

134. Cruz realleges and incorporates by reference the foregoing allegations.

135. Cruz seeks the declaration of this Court of the rights to the Hitting Cup.

136. The Declaratory Judgment Act provides, in pertinent part,

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

137. There is an actual controversy between Defendant Alan and Cruz as to who is entitled to manufacture, market, and sell the Hitting Cup.

138. This actual controversy is within the jurisdiction of this Court.

139. This Court can and should declare the rights of Defendant Alan and Cruz relative to the Hitting Cup.

**WHEREFORE,** for the foregoing reasons, Cruz respectfully requests that this Court enter judgment in its favor, and against Defendants Atlee A. Cockrell and Defendant Polly D. Cockrell,

(A) Declaring that the Hitting Cup is Cruz' intellectual property;

(B) Declaring that Cruz is the sole inventor of the Hitting Cup;

(C) Declaring that only Cruz is entitled to manufacture, market, sell, and profit from the Hitting Cup;

(D) Declaring that Defendant Alan has no right to manufacture, market, sell, or profit from the Hitting Cup; and

(E) Declaring that Defendant Alan's non-provisional patent application is void.

**COUNT IV**
**(Breach of Fiduciary Duty)**

140. Cruz realleges and incorporates by reference the foregoing allegations.

141. Defendant Alan and Cruz were putative business partners.

142. Defendant Alan owed Cruz a fiduciary duty to deal in utmost good faith with him.

143. Defendant Alan breached his fiduciary duty to Cruz when he filed the Provisional Patent Application and listed himself as a co-inventor.

144. Defendant Alan breached his fiduciary duty to Cruz when he filed the non-provisional patent application and listed himself as the sole inventor.

145. Defendant Alan breached his fiduciary duty to Cruz when he formed or helped form C² Innovative, LLC and Dunaway 31, LLC with the intention of diverting sales of the Hitting Cup to these companies.

146. Defendant Alan breached his fiduciary duty to Cruz when he attempted to divert sales of the Hitting Cup to himself, his company-Dunaway 31, LLC, and/or his wife's company-C² Innovative, LLC.

147. Defendant Alan breached his fiduciary duty to Cruz when he secretly negotiated the sale of thousands of Hitting Cups and did not advise Cruz of those sales or intend to share in the profits of those sales with Cruz.

148. Defendant Alan breached his fiduciary duty to Cruz when he attempted to have Solid Concepts, Inc. send him the half of the Hitting Cups that had been made and continued to harass Solid Concepts, Inc. when it refused to send him the Hitting Cups causing Solid

Concepts, Inc. to end its business relationship with Cruz.

149. As a result of Defendant Alan's breaches of his fiduciary duty to Cruz, Cruz has been damaged.

150. Cruz has been damaged in an amount to be proven at trial but no less than $75,000.

**WHEREFORE,** Cruz prays for a judgment and decree in his favor and against Defendant Atlee A. Cockrell, individually, and the marital community consisting of Defendant Atlee A. Cockrell and Defendant Polly D. Cockrell, each, jointly and severally, as follows:

(A) Rescission of the oral agreement;

(B) Punitive damages in an amount to be determined at trial;

(C) Pre- and post-judgment interest on any damage award at the legal rate; and

(D) Such other and further relief as the Court may determine to be appropriate.

**COUNT V**
**(Tortious Interference with a Business Relation)**

151. Cruz realleges and incorporates by reference the foregoing allegations.

152. Cruz and Solid Concepts, Inc. entered into a contractual relationship.

153. Defendants were aware that Cruz had entered into a contractual relationship with Solid Concepts, Inc.

154. Defendants intentionally interfered with the business relationship between Cruz and Solid Concepts, Inc. when they attempted to divert 2500 of the Hitting Cups.

155. Defendants intentionally interfered with the business relationship between Cruz and Solid Concepts, Inc. when they harassed Solid Concepts, Inc. to such an extent that Solid Concepts, Inc. decided to terminate its business relationship with Cruz.

156. As a result of Defendants' actions in interfering with the business relationship between Cruz and Solid Concepts, Inc., Cruz has been damaged.

157. Cruz has been damaged in an amount to be proven at trial but no less than $75,000.

**WHEREFORE,** Cruz prays for a judgment and decree in his favor and against

Defendant Atlee A. Cockrell, individually, Defendant Polly D. Cockrell, individually, and the marital community consisting of Defendant Atlee A. Cockrell and Defendant Polly D. Cockrell, each, jointly and severally, as follows:

(A) Punitive damages in an amount to be determined at trial;

(B) Pre- and post-judgment interest on any damage award at the legal rate; and

(C) Such other and further relief as the Court may determine to be appropriate.

**COUNT VI**
**(Fraud)**

158. Cruz realleges and incorporates by reference the foregoing allegations.

159. Defendant Alan represented to Cruz that he had extensive business experience with baseball products, that he had extensive business contacts including two baseball academies to whom he could market the Hitting Cup, that he would file an accurate patent application, that he would prepare a business agreement for their new business venture, and that he would form a limited liability company for their new business venture.

160. Defendant Alan's representations were false.

161. Defendant Alan's representations were material to Cruz. But for his representations, Cruz would not have gone into business with him.

162. Defendant Alan knew his representations were false when he made them.

163. Defendant Alan intended to have Cruz rely on his representations.

164. Cruz did not know that Defendant Alan's representations were false.

165. Cruz relied on Defendant Alan's representations.

166. Cruz' reliance on Defendant Alan's representations was reasonable.

167. As a result of Defendant Alan's false representations, Cruz has been damaged.

**WHEREFORE,** Cruz prays for a judgment and decree in its favor and against Defendant Atlee A. Cockrell, individually, Defendant Polly D. Cockrell, individually, and the marital community consisting of Defendant Atlee A. Cockrell and Defendant Polly D. Cockrell, each, jointly and severally, as follows:

(A) Punitive damages in an amount to be determined at trial;

(B) Pre- and post-judgment interest on any damage award at the legal rate; and

(C) Such other and further relief as the Court may determine to be appropriate.

**COUNT VII**
**(Fraud in the Inducement)**

168. Cruz realleges and incorporates by reference the foregoing allegations.

169. Defendant Alan represented to Cruz that he had extensive business experience with baseball products, that he had extensive business contacts including two baseball academies to whom he could market the Hitting Cup, that he would file an accurate patent application, that he would prepare a business agreement for their new business venture, that he would form a limited liability company for their new business venture.

170. Defendant Alan's representations were false.

171. Defendant Alan's representations were material to Cruz. But for his representations, Cruz would not have entered into the oral agreement.

172. Defendant Alan knew his representations were false when he made them.

173. Defendant Alan intended to have Cruz rely on his representations so that they would enter into the oral agreement.

174. Cruz did not know that Defendant Alan's representations were false.

175. Cruz relied on Defendant Alan's representations.

176. Cruz' reliance on Defendant Alan's representations was reasonable.

177. As a result of Defendant Alan's false representations, Cruz has been damaged

**WHEREFORE,** Cruz prays for a judgment and decree in its favor and against Defendant Atlee A. Cockrell, individually, Defendant Polly D. Cockrell, individually, and the marital community consisting of Defendant Atlee A. Cockrell and Defendant Polly D. Cockrell, each, jointly and severally, as follows:

(A) Rescission of the oral agreement;

(B) Punitive damages in an amount to be determined at trial;

(C) Pre- and post-judgment interest on any damage award at the legal rate; and

(D) Such other and further relief as the Court may determine to be appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Cruz prays for relief as set forth herein.

**DATED** this 29th day of April 2016.

**RYLEY CARLOCK & APPLEWHITE**

By *Lorena C. Van Assche*
Fredric D. Bellamy
Lorena C. Van Assche
One North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4417
Attorneys for Plaintiff